Stephen M. Doniger, Esq. (SBN 179314)
Scott A. Burroughs, Esq. (SBN 235718)
**DONIGER LAW FIRM APC**
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538
Email:  stephen@donigerlawfirm.com
Email:  scott@donigerlawfirm.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TARGET CORP.; et al., <br><br> Defendants. | Case No.: 06-4640 DSF (AJWx) <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56 AS TO DEFENDANTS TARGET CORP. AND AGE GROUP, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MOON CHOI, JAE NAH, SCOTT A. BURROUGHS, ESQ.** <br><br> [STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; [PROPOSED] ORDER SUBMITTED CONCURRENTLY] <br><br> Date:  January 14, 2008 <br> Time: 1:30 p.m. <br> Courtroom: 840 |

///

///

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on January 14, 2008 in Courtroom 840 of the Roybal Courthouse, located at 255 East Temple, Los Angeles, California 90012, Plaintiff L.A. Printex Industries, Inc. ("L.A. Printex") will move pursuant to Federal Rule of Civil Procedure 56 for summary adjudication establishing the liability of Defendants Target Corp. (hereinafter "Target") and the Age Group, Inc. ("Age Group") (collectively "Defendants") for copyright infringement, and a finding of wilfulness in committing said infringement, on the grounds that there is no genuine issue as to any material fact in connection with those claims. Plaintiff is entitled to a determination of liability and wilfulness as a matter of law on the following grounds: (1) Plaintiff holds a valid copyright in, the two-dimensional artwork at issue in this matter (hereinafter the "Subject Design") granting it a rebuttable presumption of ownership of the Subject Design, (2) Defendant Age Group created a series of clothing garments which incorporate the Subject Design ("Subject Garments") without Plaintiff's authorization,  (3) The design on the Subject Garments has both fragmented literal similarity and total concept and feel similarity to the Subject Design. (4) Target purchased these garments from Age Group and sold them to the public, and (5) Age Group knew the Subject Design to be copyrighted, yet attempted to modify its version to evade the copyright protection, and both Defendants were informed of the infringing conduct herein, yet knowingly continued in said infringement.

Plaintiff is entitled to a determination of liability for copyright infringement as a matter of law because, after considering all evidence in the light most favorable to Defendants, no reasonable fact-finder could deny that Plaintiff owns the Subject Design, the Subject Garments bear a design which is substantially similar to, and thus infringes, the Subject Design, and Defendants have trafficked in the Subject Garments.

This Motion is based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the Declarations of Moon Choi, Jae Nah, Erika Haller, and Scott A. Burroughs, Esq. filed herewith, the papers and evidence on file in this case, and such evidence and argument as may be received at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on Tuesday, December 4, 2007, at 4:30 PM.


Dated: December 21, 2007                    **DONIGER LAW FIRM**


                                            By: /S/ Scott A. Burroughs
                                            Scott A. Burroughs, Esq.
                                            Attorney for Plaintiff
                                            L.A. Printex Industries, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff L.A. Printex Industries, Inc. ("L.A. Printex") is a Los Angeles-based company which deals in top-of-the-line fabric production. Its most popular fabrics bear unique and aesthetically-pleasant designs, created to appeal to customers in the highly-specific and detail-oriented fashion industry. Plaintiff invests heavily in a well-trained design team and advanced technology in order to create the finest in textile designs, which designs drive its business. Plaintiff also scours the world for original art sources which can be used as source inspiration for new fabric designs. In 2002, Plaintiff purchased original artwork, in the form of a hand-painted watercolor floral painting, from Rome, Italy's Erika Haller Studios.  Moon Choi, a designer in Plaintiff's in-house design department, then created a textile design from that artwork by working with and redefining certain elements of the painting. She re-imagined and rearranged the floral elements, reworking the lines of the artwork and its spatial display, while balancing the design so that it would be attractive and suitable for printing onto textiles.  That design, internally numbered C30028, was registered with the United States Copyright Office in January of 2003 and assigned U.S. Copyright No. VAu 575-656.  ("C30028" or "Subject Design")

Between October of 2002 and the beginning of 2005, Plaintiff printed over one hundred thousands of yards of fabric bearing C30028; fabric that was manufactured into clothing and marketed by apparel companies nationwide. As the Subject Design became popular, it became a target for infringement. In 2004, Plaintiff first found unauthorized reproductions of said design in outlets operated by Ross Stores, which operates nationwide.

In March of 2005, Defendant Target began to offer sleepwear which bore a design substantially similar to Plaintiff's C30028.  In fact, certain elements of the intricate floral designs were identical – such that independent creation was simply not

a credible possibility. However, certain of the other elements were rearranged in a manner that suggested Plaintiff's design had been accessed and copied – modified in an attempt to disguise the piracy. Also, the printing on the fabric was not the high-quality work done in Plaintiff's facility. Plaintiff's investigation revealed that Target had received these garments from one of its primary vendors, the Age Group, which had had the garments created in China. Alarmed by this infringement, and the idea that its design had been <u>leaked</u> to a Chinese mill and would now be subject to future infringement, Plaintiff issued a cease and desist letter to Target on September 7, 2005. This letter was responded to by Target's counsel, who said he would investigate the claims, but flatly ignored in terms of the cease and desist demand. Not only did Target continue to sell the Subject Garments it already had in its possession, it actually repurchased additional Subject Garments from Age Group (which once again had them manufactured in, and imported from, China) and continued to make sales, with knowledge of infringement, until October of 2006. When sales finally ceased because all product had been sold, Age Group had illegally manufactured approximately 265,000 units in China, imported those garments into the United States, and sold them to Target. Target then sold the entirety of these garments to the public. Defendants liability for these acts is clear-cut, as set forth in full below.

## II. STATEMENT OF FACTS

### A. PLAINTIFF AND ITS COPYRIGHTED WORK

Plaintiff L.A. Printex Industries Inc. is a Los Angeles-based fabric printing mill. Nah Decl. ¶ 1-2.  Its primary business is printing fabric bearing textile designs for use in the apparel industry.  Nah Decl. ¶ 2.  Much of Plaintiff's work is generated from marketing designs created by its in-house design team and then securing printing orders for those proprietary designs. <u>Id</u>.  L.A. Printex being the exclusive source of its designs is critical to its business since it requires interested parties to print their fabric bearing Plaintiff's designs at its facility.  <u>Id</u>. Much of its work is generated from

marketing designs created by its in-house design team and then securing printing orders for those proprietary designs.  Id.

The design at issue in this matter is Plaintiff's Design No. C30028. Nah Decl. ¶ 4; Exhibit A.  The Subject Design is an abstract floral two-dimensional artwork composed of various flowers in different states of bloom, with articulated pistils and stamens. The flower's sepals are interconnected at various, irregular points, and are accompanied by flowing vinery and elements of latticework.  Choi Decl ¶ 4; See Exhibit A.  The Subject Design was created using as a source work a watercolor painting handcrafted by Erika Haller of Erika Haller Studios in Rome, Italy. Choi Decl ¶ 2; Exhibit J - Haller Decl., Exhibit One. (Color Copies of the Haller Exhibits have been attached as Exhibit J-Supplement).

L.A. Printex purchased the source for the Subject Design, and all rights attendant thereto, from Ms. Haller on May 13, 2002, well before the creation of the infringing Subject Garments. Choi Decl ¶ 3; Haller Decl. ¶ 2-8; Exhibits 1-3 to Haller Decl.  Ms. Haller "transferred the ownership" of all rights in the source artwork to Plaintiff, as evidenced by the "Design Ownership Certification" attached as Exhibit Two to Ms. Haller's Declaration [Exhibit J] Plaintiff tendered the agreed-upon consideration for the source artwork, as evidenced by the receipt for same attached as Exhibit Three to the Haller Declaration [Exhibit J].

Prior to October 2002, Moon Choi, Plaintiff's head designer, working from Ms. Haller's source, and under the direction of Jae Nah, created the Subject Design. Choi Decl. ¶ 2; Nah Decl. ¶3. The Subject Design was then registered with the U.S. Copyright Office where it was assigned U.S. Copyright No. VAu 575-656.  Nah Decl. ¶ 5; Exhibit B. The Subject Design is owned by L.A. Printex Industries, Inc. Nah Decl. ¶ 5; Exhibit B.

B.  PLAINTIFF'S RIGHTS IN, AND PUBLICATION OF, THE SUBJECT DESIGN

Plaintiff owns all rights in and to the Subject Design, and has published said design by sampling and making sales of fabric bearing same. Nah Decl. ¶6. Plaintiff has not granted any other party a license to print or otherwise reproduce the Subject Design. Nah Decl. ¶ 9.  Indeed, Plaintiff being the exclusive source of the Subject Design is critical to its business since it requires interested parties to print its proprietary fabric designs, such as thee Subject Design, at Plaintiff's facility.  Nah Decl ¶ 2.  Plaintiff makes clear that its designs are copyright and proprietary, but does open its showroom to customers to view designs. Nah Decl ¶ 2, 4. It also employs salespeople to market its designs to potential customers. Nah Decl. ¶ 2. Plaintiff distributed samples, strike-offs and swatches showing the copyrighted Subject Design to its customers from beginning in October of 2002. Nah Decl ¶ 6.  These samples are also marked as copyrighted and proprietary. Nah Decl. ¶4. The samples were distributed in a number of different colors, including those later used by Age Group in the infringement. Nah Decl. 4.

As described above, the design has been widely disseminated, and was popular with customers, as evidenced by the subsequent orders for 139,655 of yards of fabric. Nah Decl ¶ 7.  This fabric was distributed to large network of customers, which in turn distributed the fabric, and garments made therefrom, around the country.

   C. DEFENDANTS' CREATION, DISTRIBUTION AND SALE OF
      INFRINGING GARMENTS

On or around August 1, 2005, Plaintiff found pajama sets bearing its Subject Design for sale at a Target retail outlet in Commerce, California. Plaintiff's investigation at other Target stores revealed those stores to be offering a large volume of the Subject Garments for sale, including stores as far away as Maryland. Nah Decl. ¶ 8; Exhibit C.   Those garments bore the label "Cherokee," a Target store brand, and contained the RN, or vendor, number registered to Age Group. Nah Decl. ¶ 8; Exhibit C.  Further investigation revealed that Target was selling two different types of the Subject Design-infringing pajamas (a one-piece set and a two-piece set), each of

which were offered in multiple colors. Exhibit D. The design on the garments found at Target contain an exact reproduction of certain elements of the Subject Design, and possesses the "total look and feel" of the Subject Design.  Nah Decl. ¶ 8; Exhibits A, C, G.

Target has sold approximately 265,000 Subject Garments, purchasing the entirety from Age Group. Plaintiff's investigation further revealed that Age Group provided the design on the Subject Garments to Target in sample form, representing to Target that it owned said design, and making no reference to Plaintiff's rights therein. Subsequently, Target specifically requested that Age Group use the sampled design on the Subject Garments, and contractually obligated Age Group to provide said design to no other party[1]. Exhibit F - Deposition of Ebani, 37:11-12. Following the initial order by Target, Age Group sent the design to China and had the initial run of the garments created and shipped to Target's distribution hub.

As set forth above, Plaintiff issued a cease and desist letter to Target on September 7, 2005.  Burroughs ¶3; Exhibit E, page 1. Target's attorneys responded to this demand and stated they would investigate the claims but no further response was received. Burroughs Decl. ¶3; Exhibit E, page 6. Despite this notice, Target refused to stop sales of the Subject Garments in its possession after receiving the cease and desist letter, and in fact, purchased <u>additional</u> Subject Garments from Age Group

---

[1] From the Deposition of Harold Ebani, PMQ to testify for, and principal of, Age Group Ltd.:
A. Well, we would never have offered [the design on subject garments] to another customer to begin with.
Q. Why is that?
A. Because it was given to Target as an exclusive.
Q. What does that mean when you give a design to a company as an exclusive?
A. That we wouldn't use it on another garment for another retailer.
Q. And is -- why is -- is that something that Target requests?
A. Yes.
Q. What is your understanding of why they make that request?
A. They would like to avoid competition.

subsequent to receiving the cease and desist demand, and continued selling Subject Garments until at least October of 2006. Burroughs Decl. ¶ 3; Exhibit I.

As set forth above, (a) Plaintiff has proper rights in and to the Subject Design, (b) The Subject Design was published nationwide prior to the infringement herein alleged, and (c) Defendants copied the Subject Design and then sold garments which infringed said Design, failing to cease from such sales even when they were noticed of the infringement. As such, this Motion should be granted.

## III. LEGAL BRIEF

### A. THE SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F. 3d 1259, 1263 (9th Cir. 1997). The moving party must shift the burden by presenting evidence to establish the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986). Plaintiff can, and indeed will, meet this burden by making a showing that there is no probative evidence of a dispute as to any material fact. Id. Upon this showing, the Defendants must provide specific facts that indicate a dispute as to a material issue. This showing must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." Addisu v. Fred Meyer, Inc. 198 F. 3d 1130, 1134 (9th Cir. 2000).

As discussed below, no genuine issue of material fact exists as to Defendants' (a) infringement of Plaintiff's Subject Design and (b) willfulness in their respective infringement.  Defendants have advanced no evidence to rebut this showing, or to indicate that a substantive material fact is in dispute. As such, summary adjudication as to liability and willfulness is appropriate.

B. <u>DEFENDANTS ARE LIABLE FOR WILLFUL COPYRIGHT INFRINGEMENT BECAUSE PLAINTIFF HAS ESTABLISHED OWNERSHIP OF THE SUBJECT DESIGN, SUBSTANTIAL SIMILARITY AND KNOWING OR RECKLESS INFRINGEMENT OF THAT SUBJECT DESIGN BY DEFENDANTS</u>

Age Group has misappropriated the Subject Design to create a hugely-popular series of sleepwear. To do so, it shipped its slightly-modified version of the Subject Design to China, had hundreds of thousands of garments bearing said design manufactured there, imported these garments into the United States, and made sales of the Subject Garments to Target, which sold them to the public. Certain elements of the design on the Subject Garments are identical to those in the Subject Design and the overall look and feel of the two designs is similar. The minor modifications only suggest that Age Group was attempting to disguise its theft of the Subject Design.

Access can be shown by Plaintiff's nationwide publication and distribution of product bearing the Subject Design. Given that (a) Defendant's infringement occurred after over 100,000 yards of fabric printed with the Subject Design had already entered the marketplace, and (b) there is no reasonable possibility that two artists could have coincidentally created identical versions of the intricate rose designs, the issue of copyright infringement is ripe for summary adjudication.

Moreover, should the Court find that Defendants indeed copied Plaintiff's design, and then considers the undisputed evidence that Defendants Target and Age Group <u>completely ignored</u> the cease and desist letters sent by Plaintiff which put Defendants on notice of their infringement, and continued to sell the offending garments for more than another year, it should further find the willfulness of Defendants' infringement to be summarily established.

i. <u>Plaintiff has Established Infringement by Defendants</u>

The evidence on record in this case clearly establishes infringement by Defendants. To succeed on its copyright infringement claim, Plaintiff must establish

"(1) ownership of the copyright; and (2) infringement -- that the defendant copied protected elements of the plaintiff's work." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2000).

1. Plaintiff's Ownership Of The Subject Design Is Established by Its Copyright Registration and the Artist Declarations

The registration certificate for the Subject Design is evidence of L.A. Printex Industries, Inc.'s ownership of the copyright in that design.  Under 17 U.S.C. § 410(c), the certificate constitutes *prima facie* evidence of the validity of the copyright and the facts stated in the certificate, including Plaintiff's ownership. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144–45 (9th Cir. 2003); See also commentary to 9th Circuit Model Jury Instruction 17.5.

This presumption is buttressed by the Declarations of Nah, Choi, and Haller [Exhibit J], which provide uncontroverted affirmative evidence of the creation of the work and its originality, i.e., "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1076 (9th Cir. 2000)(quoting Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991)).

This presumption is also edified by the type of artwork which is at issue, an expressive, multi-element textile design. Undoubtedly, the work qualifies for protection as a work of visual art. It is also well-settled that the selection and rearrangement of elements of a work can constitute protectable expression under the Copyright Act. Urantia Foundation v. Maaherra, 114 F.3d 955, 958–59 (9th Cir. 1997). If a minimal degree of expression is encompassed in the work, it may be subject to protection. Feist at 345. In this case there is ample evidence of protectable expression. As stated above, Plaintiff's designer Moon Choi, under the working, from the source artwork, which Plaintiff owned, to create a unique and expressive textile design. Further supporting this position is the fact that the design so unique that

Target requested Age Group provide it exclusively to Target because Target wanted to "avoid competition." Exhibit F; Fn 1, supra.

Plaintiff has produced its certificate of copyright registration, as well as evidence relating to the Subject Design's development to evidence its ownership. Exhibit B; Decls. Of Nah, Choi, Haller[Exhibit J]. Through the Declarations of Nah, Choi and Haller, the artists involved in the development of the Subject Design have testified in regard to the creation of the work and its ownership by Plaintiff.

Based on the foregoing, it cannot be disputed that the Subject Design is copyrightable and owned by Plaintiff.

2. Defendants' Infringement Of The Subject Design is Shown through its Access to the Subject Design, and their Literal Reproduction of Said.

Plaintiff can also establish the second element of Plaintiff's copyright infringement claim - that the defendants copied the Subject Design. In order to make this showing, Plaintiff must advance evidence that the two designs are so similar that it is improbable the allegedly infringing design was independently created. Once this showing is made, the burden shifts to the infringing party to show that the design at issue was independently created. See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir.2000)

a. Access to the Subject Design

In order to prove copying, Plaintiff must show that the Defendants had access to the Subject Design. In order to satisfy this showing, Plaintiff must only prove that one or more of the Defendants had an "opportunity to view or copy" the Subject Design.  See Three Boys Music Corp., at 483; Playboy Enterprises, Inc. v. Starware Publishing Corp., 900 F. Supp. 433, 437 (S.D. Fla. 1995); Fisher-Price Toys, Div. of Quak. O. Co. v. My-Toy Co., Inc., 385 F. Supp. 218, 220 (S.D.N.Y. 1974) (access to dolls through advertising in trade journals and display at toy fairs).   Because it is not often that an infringed party is able to catch the infringer in the act, "[p]roof of access requires only an opportunity to view or to copy plaintiff's work." Kamar

MOTION FOR SUMMARY ADJUDICATION

1   International v. Russ Berrie & Co., 657 F.2d 1059, 1062 (9th Cir. 1981).  An

2   opportunity to view or copy may be established by evidence that "the plaintiff's work

3   has been widely disseminated." Three Boys Music Corp., at 482.

4        This showing has clearly been made by Plaintiff. Plaintiff distributed samples,

5   strike-offs and swatches depicting the copyrighted Subject Design in a wide array of

6   colors. These were distributed to L.A. Printex customers starting in October 2002 and

7   continuing over the subsequent years. Following this publication and dissemination

8   of the Subject Design, Plaintiff distributed over a 100,000 yards of product bearing

9   said design to a wide network of customers. This would establish nationwide

10  publication for terms of access to the design by Defendants. Id.

11       In addition, access can be inferred if the infringing design is so similar to the

12  design at issue, that independent creation is impossible. Three Boys Music, at 485.

13  The similarity will satisfy this test if the works involved are sufficiently unique so as

14  to make it "unlikely" that the designs were independently created. Selle v. Gibb, 741

15  F.2d 896, 903 (7th Cir. 1984) In this case, not only is the total look and feel of the

16  designs the same, but certain elements of the respective designs, namely two of the

17  large intricate rose, stem and leaf groupings, and others as well, are identical. See

18  Exhibit G for comparison of design elements. It is simply the same artwork, down to

19  the minutest detail, and said work is far too complex to have been independently

20  created by two artists, especially given the timeline. As such, access, to the extent it is

21  not established by nationwide distribution of the Subject Design, may be inferred by

22  this Court.

23       As access has been shown, the burden shifts to Defendants to allege

24  independent creation. Three Boys Music, at 486. In this case, the designs are so

25  substantially similar, both in the literal depiction of certain elements of the design,

26  and its total look and feel, that it is simply impossible that the infringing design was

27

28

1   independently created. No admissible evidence of such independent creation has yet

2   been produced[2].

3        b.    Substantial Similarity Exists

4        In addition, Plaintiff is also able to establish substantial similarity under the

5   multi-step analysis used in this Circuit. Cavalier v. Random House, 297 F.3d 815,

6   824 (9th Cir. 2002). The two-part test examines the works at issue on both an

7   extrinsic and intrinsic level to ascertain whether an infringement has occurred Three

8   Boys Music, at 485; See also  Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).

9        Initially, Plaintiff satisfies the extrinsic test, which analyzes whether the works

10  at issue similarly express the ideas encompassed in the works when examined on an

11  objective, external level. Three Boys Music, at 485. On a motion for summary

12  judgment, the court settles the extrinsic test. Jackson, at 1218. The moving party

13  satisfies this test when it can identify elements of the two works which are similar

14  and also demonstrating that these elements are copyrightable. Apple Computer, Inc.

15  v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir.1994).

16       Plaintiff's satisfaction of this test is clear upon review of Exhibit G, which is a

17  close-up view of elements of the Subject Design and the design on the Subject

18  Garments. Note that, in Exhibit G, the first and second rows of elements are virtually

19  identical, and the third and fourth rows show the modified versions of the Subject

20  Design.

21       Also, comparison of Exhibit A, which is the Subject Design imprinted on

22  fabric, and Exhibit C, which is an image of an exemplar of the Subject Garment

23  reveals that the design on the garments and Plaintiff's proprietary Subject Design

24

25

26  [2] On November 15, 2007, the night before Age Group's deposition, and three
    business days before the discovery cut-off, Age Group produced for the first
    time the name a designer and documentation which purportedly evidences Age
27  Group's independent creation of the design at issue. This information should
    have been produced over a year ago under Fed. R. Civ .P. 26. Plaintiff's request
    to exclude this information is now submitted to Honorable Andrew J. Wistrich.
28  Age Group had previously been sanctioned for discovery abuses.

possess the same total look and feel, and certain elements, primarily the large rose groupings, and others as well, are one and the same.  As it is difficult to compare a design printed on the swatch with that printed on the pajama fabric given the differing textures, Plaintiff will also, should the Court find it necessary, provide swatches of Plaintiff's fabric bearing the Subject Design and an exemplar of a Subject Garment for an in-person inspection.

In regard to the identical elements of the design, if there is "slavish copying" of the infringed work, a substantial similarity analysis is unnecessary.  Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n.4 (2d Cir. 1977); See also  Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). ("No greater similarity is possible than defendants' "photographic reproduction" of Plaintiff's floral design). The above cases, also dealing with textile designs, evidence the Court's willingness to find infringement upon a showing of similar design elements, such as those at issue in this matter.

In addition, the Subject Garments are printed in colors which are substantially similar to the colors in which the Subject Design was sampled by Plaintiff. This sort of similarity in color schemes militates in favor of finding infringement. Id.

In addition, expert testimony is generally appropriate in conducting the extrinsic test. Jackson, at 1218. Plaintiff has retained an expert who, after comparing the designs, rendered her opinion that the designs are similar See Exhibit H, Expert Report of Frances Harder. Ms. Harder, an expert on issues pertaining to design and the fashion industry indicated that she believes the design on the Subject Garments to be a "knock[]-off" of the Subject Design. Exhibit H, Page 5.  No rebuttal expert was designated by Defendants and the time for doing so has long expired. No other evidence of dissimilarities in the designs has been adduced. As such, this requirement has been met by Plaintiff.

Plaintiff has also satisfied the intrinsic test, which asks whether the "ordinary, reasonable person would find the total concept and feel of the works to be

substantially similar." <u>Three Boys Music</u>, 212 F.3d at 485. An infringement has occurred if a defendant has captured the "total concept and feel" of the plaintiff's work. <u>Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1166 (9th Cir. 1977).  In deciding whether the total concept and feel is substantially similar, the Court analyzes the work "as a whole." <u>Apple Computer</u>, 35 F.3d at 1443. <u>See</u> <u>also</u> <u>Data East USA, Inc. v. Epyx, Inc.</u>, 862 F.2d 204, 208 (9th Cir. 1988) When comparing the two works at issue here, it is clear that the expressions are substantially similar when taken "as a whole." Furthermore, when comparing the designs at issue, it is beyond dispute that the design on the Subject Garments is substantially similar to the Subject Design because Defendant has captured the "total concept and feel" of the Plaintiff's design.  <u>See</u> <u>Sid & Marty Krofft Television Productions, Inc.</u>, at 1166. The "total concept and feel" analysis compares the similarity of the particular expression used, and does not require a point by point dissection from expert witnesses. <u>Id.</u> at 1164.  It is clear from viewing the two designs at issue that the "total concept and feel" is one and the same.

Finally, while the intrinsic test is somewhat subjective, the Court must still grant summary judgment if the moving party has met its burden in showing that "the works are so overwhelmingly identical that the possibility of independent creation is precluded." <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1330 (9th Cir. 1983).  In such a case, "it is not necessary for a jury to decide the questions raised by the intrinsic test." <u>Id.</u>  As set forth above, this is such a case; accordingly, this Motion must be granted.

3. <u>Defendants' Willful Infringement of the Subject Design Is Established Through The Evidence of Copying and of Continued Sales For More Than A Year After Being Put On Notice Of The Infringement.</u>

As set forth above, it is inconceivable that the infringing design was independently created. Given the virtually infinite options of drawing grouping, and

arranging collections of flowers, leaves, and stems, the only conclusion a trier of fact could reach is that Defendant copied Plaintiff's design.  Despite the clear nature of the infringement, however, Defendants, after receiving notice of infringement, made a conscious and willful decision to continue purchasing and selling these illegal garments for another year. This constitutes willful infringement.

Plaintiff has produced the "substantial evidence" necessary to establish the willfulness of Defendants. Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1013-14 (9th Cir. 1985). Copyright infringement is "willful" if it is shown that one has committed the infringement "with knowledge that [one's] conduct constitutes copy-right infringement." Columbia Pictures Television v.Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284,293 (9th Cir. 1997), rev'd on other grounds by Feltner v.Columbia Pictures Television, Inc., 118 S.Ct. 1279 (1998).

In this case, Plaintiff has submitted proof that it issued a cease and desist demand in September of 2005. See Exhibit E, Page 1. Target's counsel responded to this demand, stating that it was investigating Plaintiff's claims. See Exhibit E, Page 6. A letter from a defendant's lawyer leads to an "inescapable reference that defendant had constructive knowledge that its actions were infringing."  4 Nimmer on Copyright 14.04[B][3][a] fn. 81.20 (2007), discussing N.A.S. Import, Corp. v. Chenson Enters., Inc. 986 F.2d 250, 252, 253 (2d Cir. 1992).  Despite this knowledge, Target continued to purchase and sell the goods set forth in the cease and desist demand for over a year. See Exhibit I – Target Sales Record[redacted], which indicates the Subject Garments were sold through the October 2006 accounting period. Continuing the sales of garments after receipt of notice of infringement constitutes willful infringement. Dolman v. Agee 157 F.3d 708, 711, 715 (9th Cir. 1998).

In the Dolman litigation, the defendant's attorney indicated that the defendant's rights as to the works at issue were "a mess" in light of the notice of

infringement it had received. Despite this notice, and the "mess," the defendant continued to sell the infringing product. The Court found Defendant's conduct to be willful infringement. A similar situation must have arisen upon Defendants' receipt of the cease and desist demand in this case, yet, like the <u>Dolman</u> defendant, Target and Age Group continued to make sales of the infringing goods subsequent to the notice. Documents relating to sales of Subject Garments are covered by a protective order, but Plaintiff will make these documents available upon request by the Court.

As set forth above, Target received a cease and desist letter from Plaintiff informing Target of its infringing conduct.  The letter provided notice of the infringement and included a request to remove the garments immediately or be in further violation of copyright laws.  With knowledge of the infringement, or in reckless disregard for Plaintiff's rights, Target ignored the cease and desist letter and continued buying and selling infringing garments. In addition, Age Group continued to import the offending garments from China, introducing more illicit fabric into the marketplace. This can only be deemed a willful violation of Plaintiff's rights. Also, as set forth below, Age Group's attempt to disguise its piracy also supports a finding of willfulness as to that party.  Given the above, the only conclusion a reasonable fact-finder can reach is that the infringement was willful. As such, this motion must be granted.

4. <u>Differences between Designs at Issue Militate in Favor of Finding of Infringement; Establishing Willfulness</u>

The modest differences between the two designs at issue do not preclude a finding of infringement; in fact, they indicate knowledge of the Subject Design's copyright protection and militate in favor of a finding of willfulness. There exist indicia that Defendants attempted to circumvent Plaintiff's copyright protection by slightly modifying the Subject Design. Slight modifications made to obfuscate piracy do not allow an infringer to escape liability for the infringement. <u>Runge v. Lee</u>, 441

F.2d 579, 582 (9 Cir. 1971). The Ninth Circuit made this explicitly clear when it opined that:

> "[An] infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy."

Universal Pictures Co., Inc. v. Harold Lloyd Corp., 162 F.2d 354, 360 (9th Cir. 1947).

Not only are these slight modifications not a defense, they indicate that Age Group acted with knowledge of the rights in the work. Otherwise, why would its' designers make the modifications? The changes are too minor to be made for aesthetic purposes. The Court has addressed similar conduct, stating that "... no plagiarist can excuse the wrong by showing how much of his work he did not pirate." Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936). Defendants engaged in wholesale reproduction of certain elements of Plaintiff's design and made minor revisions to other elements of the work. These revisions failed to alter the "total look and feel" of the infringing design, but did expose an attempt to evade the copyright protection.

In light of these small, deliberate modifications and the wholesale theft of certain segments of the Subject Design, it is indisputable that the law supports the requested finding. Noted Jurist Learned Hand would agree, as he has opined that copyright infringement "cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2 Cir. 1930). Age Group is trying to escape in just such a manner; Plaintiff requests that the Court block this attempt and grant this Motion.

## IV. CONCLUSION

Plaintiff has carried the burden imposed by Fed. R. Civ. P. 56. Defendants cannot avoid the inescapable conclusion that they willfully created, imported and sold

garments that violate Plaintiff's copyright in the Subject Design, and continued to do so after receiving notice of such infringement. Because there is no triable question of fact in this case concerning the liability of Defendants, this Motion should be granted.

Moreover, there can be no real dispute as to whether the intentional modification, and copying of the Subject Design and the continuing sales after being put on notice of infringement, equals willfulness. As such, the question of willfulness is also properly subject to summary adjudication.

As ample grounds on which to grant this Motion have been established, and granting this motion will streamline this case so the parties can focus on the issues still in dispute, L.A. Printex respectfully requests that this Court grant its request for summary adjudication as to liability for copyright infringement, and as to the willfulness of said infringement.

Respectfully submitted,
DONIGER LAW FIRM

DATED: December 21, 2007    By: /S/ Scott A. Burroughs
                                     Scott A. Burroughs, Esq.
                                     Attorneys for Plaintiff
                                     L.A. Printex Industries, Inc.

## DECLARATION OF MOON CHOI

I, MOON Y. CHOI, declare, and state that if called as a witness I could and would competently testify as follows:

1.     I am an employee of LA Printex Industries, Inc. ("L.A. Printex"), and am employed as part of its design team.

2.     Prior to October 2002, I, as, Plaintiff's head designer, working from Ms. Haller's source, and under the direction of Jae Nah, created the Subject Design.

3.     L.A. Printex purchased the source for the Subject Design, and all rights attendant thereto, from Ms. Haller on May 13, 2002.

4.     The Subject Design is an abstract floral two-dimensional artwork composed of various flowers in different states of bloom, with articulated pistils and stamens, with the flower's sepals interconnected at various, irregular points with flowing vinery and elements of latticework.

5.     I understand that LA Printex Industries, Inc. has filed for and obtained registration for C30028 with the Copyright Office.  I believe C30028 to be owned by L.A. Printex.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of December, 2007, at Vernon, California.


By:_____
MOON Y. CHOI
Declarant

## DECLARATION OF JAE NAH

I, JAE NAH, declare, and state that if called as a witness I could and would competently testify as follows:

1.     I am the president of L.A.  Printex Industries, Inc. ("L.A. Printex"), Plaintiff in this action.

2.     L.A. Printex is a Los Angeles-based fabric-printing mill engaged primarily in the business of printing fabric bearing textile designs for use in the apparel industry. Much of our company's work is generated from marketing designs created by our in-house design team and then securing printing orders for those proprietary designs. L.A. Printex being the exclusive source of the Subject Design is critical to its business since it requires interested parties to print their fabric bearing the Subject Design at our facility.  Our company makes clear that its designs are copyrighted and proprietary, but does open our facility to customers to view our designs.  L.A. Printex also employs salespeople to market our designs to potential customers.

3.     I oversaw Ms. Choi's development of L.A. Printex Design No. C30028 ("Subject Design"). I was at the L.A. Printex facility during the development of the Subject Design and visited the design department regularly to oversee the operation.

4.     The Subject Design is the design is at issue in this action, and a copy of said design is attached hereto as Exhibit A. L.A. Printex distributed samples of the Subject Design to its customers. The samples were marked as proprietary and copyrighted and were distributed in a number of different colors, including those later used by Age Group in creating the infringing goods.

5.     Following the creation of the Subject Design, L.A. Printex applied for, and received, a United States Copyright Registration, No. VAu 575-656.  Said registration was issued on January 17, 2003.  A true and correct copy of the Registration is attached hereto as Exhibit "B". The Subject Design is owned by L.A. Printex Industries, Inc.

6.      L.A. Printex distributed samples, strike-offs and swatches depicting the copyrighted Subject Design to its customers beginning in October of 2002.

7.      L.A. Printex began taking orders for the Subject Design in October 18, 2002, selling approximately 139,655 yards to various customers from October 18, 2002 to January 8, 2007.

8.      On or around August 1, 2005, my investigators found pajama sets bearing the Subject Design for sale at a Target retail outlet in Commerce, California. Our investigation at other Target stores revealed those stores to be offering a large volume of the Subject Garments for sale, in stores as far away as Maryland. Those garments bore the label "Cherokee," a Target store brand, and contained the RN, or vendor, number registered to Age Group. The design on the garments found at Target contains an exact reproduction of certain elements of the Subject Design, and possesses the "total look and feel" of the Subject Design.   A true and correct copy of the one of the garments purchased at Target, which bears the Subject Design is attached hereto as Exhibit "C".

9.      L.A. Printex owns all rights in and to the Subject Design, and has published said design by sampling and making sales of fabric bearing same. Our company has not granted any other party a license to print or otherwise reproduce the Subject Design.  L.A. Printex has not given any other company express or implied permission or license to reproduce the Subject Design, either on fabric or otherwise, anywhere other than at the L.A. Printex facility.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of December, 2007, at Vernon, California.


By:_____
JAE NAH
Declarant

## <u>DECLARATION OF SCOTT A. BURROUGHS, ESQ.</u>

I, Scott A. Burroughs, Esq., declare, and state that if called as a witness I could and would competently testify as follows:

1.     I am a shareholder in the DONIGER LAW FIRM, APC, attorneys for Plaintiff in this action.

2.     I have attached hereto as Exhibit A a true and correct copy of design C30028 ("Subject Design"), as Exhibit B a true and correct copy of the Copyright Certificate for the Subject Design, as Exhibit C a true and correct copy of an image of one of the infringing garments sold by Target, as Exhibit D a true and correct copy of  a document depicting the various forms and colors in which Age Group sold the Subject Garments to Target, as Exhibit F, a true and correct copy of the relevant page from the Harold Ebani Deposition transcript, as Exhibit G a true and correct copy of a close-up comparison of the two designs at issue, as Exhibit H, a true and correct copy of Frances Harder's Expert Report, as Exhibit I, a true and correct redacted copy of Target's sales record for the Subject Garments, and as Exhibit J a true and correct copy of the Erika Haller Deposition and color copies of the Exhibits thereto.

3.     On September 7, 2005, I issued a cease and desist demand to Target, a copy of which I have attached hereto as Exhibit E. I received a response from James Steffan, counsel to Target indicating they would be investigating, but received nothing further. A true and correct copy of that response is also attached as part of Exhibit E.

4.     Target continued to sell the Subject Garments in its possession after receiving the cease and desist letter. I know this from personal review of the Target sales documents, which are confidential pursuant to the Protective Order. Plaintiff will make these documents available for an in camera review upon request.

5.     In advance of filing this Motion, the parties conducted the conference of counsel pursuant to Local Rule 7-3. This conference took place on Tuesday,

December 4, 2007, at 4:30 p.m., and included counsel for Plaintiff as well as counsel for Target Corp and Age Group, Ltd.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of December, 2007, at Culver City, California.

By: /S/ Scott A. Burroughs
SCOTT A. BURROUGHS
Declarant