DAVID F. McDOWELL (CA SBN 125806)
e-mail: dmcdowell@mofo.com
SCOTT C. MOORE (CA SBN 203181)
e-mail: smoore@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

JAMES R. STEFFEN (*Pro Hac Vice*)
e-mail: jrsteffen@faegre.com
TIMOTHY J. CRUZ (*Pro Hac Vice*)
e-mail: tcruz@faegre.com
FAEGRE & BENSON LLP
2200 Wells Fargo Center
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Defendant
TARGET CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> TARGET CORP., a Minnesota Corporation; et al., <br><br> Defendants. | Case No.: CV-06-4640 DSF (AJWx) <br><br> **MEMORANDUM IN SUPPORT DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hon. Dale S. Fischer <br> Date: January 14, 2008 <br> Time: 1:30 p.m. <br> Location: Courtroom 840 |

1

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES…………………………………………….......3

3  INTRODUCTION………………………………………………...........6

4  STATEMENT OF UNDISPUTED FACTS……………………….........7

5      A.   Plaintiff L.A. Printex and its Floral Design…………………...........7

6      B.   Target's Sale of Age Group's Nightgown……………………….8

7  APPLICABLE LEGAL PRINCIPLES……………………………………9

8      A.   Summary Judgment……………………………………………….9

9      B.   Copyright Infringement……………………………………………9

10  ARGUMENT…………………….......................................................13

11      A.   Plaintiff Cannot Protect Features that are Common in

12           Nature……………………………………………….…..…..14

13      B.   Plaintiff Cannot Protect Features That Are Not Original…………...16

14      C.   The Accused Design is Not "Virtually Identical" to any element

15           of Protectable Feature in the C30028 Design………………………19

16  CONCLUSION………………………………………………….......20

17
18
19
20
21
22
23
24
25
26
27
28

fb.us.2497411.04

2

1

## TABLE OF AUTHORITIES

2 **Cases**:                                                                          **Page(s):**

3 Aliotti v. R. Dankin & Co.,

4     831 F.2d 898 (9th Cir. 1987)……………………………………...……10, 11

5 Anderson v. Liberty Lobby, Inc.,

6     477 U.S. 242, 250 (1986)………………………………………………..11, 9

7 Apple Computer v. Microsoft Corp.,

8     35 F.3d 1435 (9th Cir. 1994)………………………………...…9, 11, 12, 13, 19

9 Cavalier v. Random House, Inc.,

10     297 F.3d 815 (9th Cir. 2002)………………………………………10, 11, 13

11 Celotex Corp. v. Catrett,

12     477 U.S. 317, 327 (1986) ……………………………………………………...9

13 Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.,

14     777 F.2d 485 (9th Cir. 1985)……………………………………………...16, 17

15 Cosmos Jewelry LTD v. Po Sun Hon Co.,

16     470 F. Supp. 2d 1072 (C.D. Cal. 2006)……………………………10, 15, 19

17 Dyer v. Napier,

18     2006 U.S. Dist. LEXIS 68990 (D. Ariz. September 26, 2006)……………......13

19 Ets-Hokin v. Skyy Spirits, Inc.,

20     323 F.3d 763 (9th Cir. 2003)………………………………………………..…12

21 Frybarger v. Int'l Business Machines Corp.,

22     812 F.2d 525 (9th Cir. 1987)……………………………………….……10

23 Herbert Rosenthal Jewelry Corp. v. Kalpakian,

24     446 F.2d 738 (9th Cir. 1971)……………………………………………..12

25 Idema v. Dreamworks, Inc.,

26     162 F.Supp.2d 1129 (C.D. Cal. 2001)……………………………….…..12

27

28

fb.us.2497411.04

Jefferson Airplane v. Berkeley Sys., Inc.,

    886 F.Supp. 713 (N.D. Cal. 1994)…………………………………………17

Kouf v. Walt Disney Pictures & Television,

    16 F.3d 1042 (9th Cir. 1994)…………………………………………….13

Los Angeles News Service v. Tullo,

    973 F.2d 791 (9th Cir. 1992)…………………...…………………………..13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

    475 U.S. 574 (1986) ......................................................................9

Mazer v. Stein,

    347 U.S. 201 (1954)………………………………………………………..11

Nichols v. Universal Pictures Corp.,

    45 F.2d 119, 121 (2d Cir.1930)……………………………………….....19

Pasillas v. McDonald's Corp.,

    927 F.2d 440 (9th Cir. 1991)……………………………………...………..10

Rachel v. Banana Republic, Inc.,

    831 F.2d 1503 (9th Cir. 1987)……………………………………….....…10

Rice v. Fox Broadcasting Co.,

    330 F.3d 1170 (9th Cir. 2003)……………………………………...….…11

Satava v. Lowry,

    323 F.3d 805 (9th Cir. 2003)…………………………………….12, 15, 18, 19

See v. Durang,

    711 F.2d 141 (9th Cir. 1983)…………………………………………….12

Shaw v. Lindheim,

    919 F.2d 1353 (9th Cir. 1990)………………………………….…10

Smith v. Jackson,

    84 F.3d 1213 (9th Cir. 1996)…………………………………...…..11

fb.us.2497411.04

4

1

Swirsky v. Carey,

376 F.3d 841 (9th Cir. 2004)……………………………………...11, 13

Urantia Foundation v. Maaherra,

114 F.3d 955, 963 (9th Cir. 1997)………………………………………..8

Worth v. Selchow & Righter Co.,

827 F.2d 569 (9th Cir. 1987)……………………………………………10

**Statutes:**

17 U.S.C. §  102(b)…………………………………………………………..11

17 U.S.C. § 411(b)……………………………………………..……17

fb.us.2497411.04

Defendant Target Corporation ("Target"), by its undersigned attorneys, hereby respectfully moves the Court, pursuant to Fed. R. Civ. P. 56, for summary judgment in its favor on all claims asserted against it in Plaintiffs' Second Amended Complaint For Copyright Infringement, filed February 25, 2007 (the "Complaint").

## INTRODUCTION

This copyright suit involves three versions of the classic "English tea rose" pattern that for many years has been incorporated into textile and other designs. The three patterns all share the common idea of a cluster of blooming roses, accented with various design flourishes and leaves. Plaintiff claims to have purchased rights in a first version, and to have derived from that design a second version. Plaintiff alleges in the Complaint that a third tea rose design, created by defendant Age Group and incorporated into sleepwear sold by defendant Target, infringes Plaintiff's federal copyright registration in its derivative design.

While all of the works are based on common idea of the classic "tea rose," neither the idea of a tea rose nor the elements that follow from the idea are protectable under copyright law. Ninth Circuit courts are especially careful not to grant a copyright owner a monopoly in features, such as the idea of a "tea rose pattern," that are grounded in nature and exist in the public domain. Indeed, copyright law is clear that versions of classic, nature-based patterns are entitled to only the thinnest of copyright protection.

Plaintiff has no direct evidence that its derivative design was copied. Thus, in order to carry its burden of proof on infringement, Plaintiff must prove that the Accused Design and the C30028 Design are "substantially similar" in their protected expression. For purposes of summary judgment, the Ninth Circuit's

6

objective "extrinsic test" is the test for "substantial similarity."  The extrinsic test requires the Court to "analytically dissect" the features of the C30028 Design to identify any elements of creative authorship.  The Court must then apply limiting doctrines that exclude from protection any element that is common in nature, not original, or subsists in the public domain.  After subtracting these unprotectable features, the Court must determine whether the Accused Design is substantially similar to any remaining feature of the C30028 Design.  Because the copyright in Plaintiff's work is thin, the relevant test for illicit copying is whether the works are "virtually identical" in protectable expression.

As more fully discussed below, Target is entitled to summary judgment on the issue of liability because no reasonable jury applying the Ninth Circuit's extrinsic test could find that the Accused Design is "virtually identical" to any protected element(s) of the C30028 design.

## STATEMENT OF FACTS UNDISPUTED
## FOR PURPOSES OF THIS MOTION

A.     Plaintiff L.A. Printex and its Floral Design

Plaintiff L.A. Printex is in the business of textile manufacturing.  Plaintiff claims to have purchased in 2002 a painting from Erika Haller comprised of "tea rose" clusters and various flourishes (the "Haller Design").  (Compl. ¶ 12).  A designer affiliated with Plaintiff then used a computer to scan and adapt elements of the Haller Design.  (Choi Dep. 49:7-8, Nov. 14, 2007.)  The resulting work was designated by Plaintiff as C30028.  (Compl. ¶ 12.)  A color scan of the C30028 Design is attached at Exhibit B to the Cruz Declaration.

Plaintiff applied for and received on January 17, 2003 United States Copyright Registration No. VAu575-656 (the "'656 Registration") for the C30028

fb.us.2497411.04

1   Design.  (Id. ¶ 13.)  Plaintiff did not disclose in its copyright application that the

2   Haller Design was preexisting material upon which the C30028 Design was

3   derived (see Cruz Decl. Ex. C.), but now admits that the C30028 Design is

4   derivative of the Haller Design (see Compl. ¶  12).[1]

5

6   B.   Target's Sale of Age Group's Sleepwear

7        Target operates a chain of TARGET® discount department stores, now

8   numbering more than 1,500 stores in 46 of the United States.

9        In 2005, Target purchased from defendant Age Group certain women's

10  sleepwear that incorporated the Accused Design.  (See Cruz Decl. Ex. D.)  A scan

11  of one colorway of the Accused Design is attached as Exhibit D to the Cruz

12  Declaration.

13       Target had no involvement in the creation of the Accused Design (see Oshel

14  Dep. at 14, 31); (Ebani Dep. at 41), and Age Group represented to Target at the

15  time of Target's purchase that Target's sale of the sleepwear would not infringe

16  any copyright or other intellectual property right of any third party.[2]  (See Cruz

17  Decl. Ex. J at ¶ 6(d); Ex. K.)

18       Target sold the sleepwear in its stores in late 2005 and early 2006.  Target is

19  no longer selling the accused garment.  (See Oshel Dep. 24, 26.)

20

21  _____

22  [1]   17 U.S.C. § 409(9) required that Plaintiff disclose the preexisting Haller work in its
         copyright application.  Plaintiff's claim of copyright infringement will be barred if the
23       jury finds at trial that Plaintiff's failure to disclose the required information was
         intended to defraud the Copyright Office.  Urantia Foundation v. Maaherra, 114 F.3d
24       955, 963 (9th Cir. 1997).

25  [2]   Age Group has in the action contended that the Accused Design was created
         independent of any reference to the C30028 Design.
26

27

28                                           8

1    **APPLICABLE LEGAL STANDARDS**

2         A.    <u>Summary Judgment</u>

3         Summary judgment is "properly regarded not as a disfavored procedural

4    shortcut, but rather as an integral part of the Federal Rules as a whole, which are

5    designed 'to secure the just, speedy and inexpensive determination of every

6    action.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  "One of the

7    principal purposes of the summary judgment rule is to isolate and dispose of

8    factually unsupported claims or defenses[.]"  <u>Id.</u> at 323-24.  A properly supported

9    motion for summary judgment requires the nonmoving party to go beyond the

10   pleadings and present affirmative evidence designating specific facts showing that

11   there is a genuine issue for trial.  <u>Id.</u> at 324.

12        A party cannot avoid summary judgment by resting upon the denials or

13   allegations in its pleadings.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250

14   (1986).  Nor can a party resist a motion for summary judgment by arguing that

15   facts supporting its claim will be developed at trial, or by "simply show[ing] that

16   there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus.</u>

17   <u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary

18   judgment, a party must produce affirmative evidence designating specific facts

19   showing that there is a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 324.

20        B.    <u>Copyright Infringement</u>

21        In order to prevail on a copyright infringement claim in the Ninth Circuit, a

22   plaintiff must show that: (1) it owns a valid copyright; and (2) the defendant copied

23   protected elements of the copyrighted work.  <u>Apple Computer v. Microsoft Corp.</u>,

24   35 F.3d 1435, 1442 (9th Cir. 1994).  Where, as here, there is no direct evidence of

25   copying, a plaintiff can attempt to establish "copying" by showing that the

26

27

28

defendant had access to the plaintiff's work and the two works are "substantially similar" in idea and in protected expression of the idea.  Id.

While summary judgment is not "highly favored" on questions of substantial similarity in copyright cases, summary judgment is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable jury could find substantial similarity of protected elements.  See Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002).  Indeed, the Court in Shaw v. Lindheim noted that the Ninth Circuit has "frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity."  919 F.2d at 1355 (citing Worth v. Selchow & Righter Co., 827 F.2d 569, 571 (9th Cir. 1987) (citing cases), cert. denied 485 U.S. 977 (1988)).  See also Cosmos Jewelry LTD v. Po Sun Hon Co., 470 F. Supp. 2d 1072 (C.D. Cal. 2006) (summary judgment granted where designs depicting the same type of flower not substantially similar in protected expression); Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991) (summary judgment affirmed where masks depicting the man in the moon not substantially similar in protected expression); Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1507 (9th Cir. 1987) (summary judgment affirmed where synthetic animal heads not substantially similar in protected expression); Aliotti v. R. Dankin & Co., 831 F.2d 898, 900 (9th Cir. 1987) (summary judgment affirmed where stuffed dinosaur toys not substantially similar in protected expression).

"To show that two works are substantially similar, Plaintiff must demonstrate that the works are substantially similar in both ideas and expression." Frybarger v. Int'l Business Machines Corp., 812 F.2d 525, 529 (9th Cir. 1987). Although Plaintiff must first show that the ideas are substantially similar, the ideas themselves are not protected by copyright and, therefore, cannot be infringed. See

fb.us.2497411.04

Mazer v. Stein, 347 U.S. 201, 217-18 (1954) (copyright law protects only an artist's expression of an idea, not the idea itself); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Thus, to the extent that similarities between the C30028 Design and the Accused Design are confined to ideas and general concepts, the similarities are non-infringing. Id.

The Ninth Circuit employs a two-part analysis to determine whether works are substantially similar in expression: an objective extrinsic test and a subjective intrinsic test. Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). For the purposes of summary judgment, "only the extrinsic test is important." Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003). If Plaintiff cannot present evidence that would permit a trier of fact to find that it has satisfied the extrinsic test, Plaintiff necessarily loses on summary judgment because "a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." Rice, 330 F.3d at 1174.

The extrinsic test considers whether two works share a similarity of ideas and protected expression as measured by external, objective criteria. See Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996). Critically, in applying the extrinsic test, the court must distinguish between protectable and unprotectable elements of the copyrighted work at issue, because a party claiming infringement may place "no reliance upon any similarity in expression resulting from unprotectable elements." Apple Computer, Inc., 35 F.3d at 1446 (citation and internal quotation marks omitted); Aliotti, 831 F.2d at 901 (similarities between dinosaur toys on

11

fb.us.2497411.04

account of posture and body design stem from the physiognomy of dinosaurs and are unprotectable).  The court, in comparing the works, must filter out the unprotectable elements.  <u>Apple Computer, Inc.</u>, 35 F.3d at 1443.  "Among the 'unprotectable elements' which the court must 'filter' out of its comparison of a copyrighted work and an allegedly infringing work are: "ideas," as distinguished from the "expression" of those ideas; . . . or other information over which no individual is entitled to claim a monopoly. . . ."  <u>Idema v. Dreamworks, Inc.</u>, 162 F.Supp.2d 1129, 1176-77 (C.D. Cal. 2001), <u>aff'd</u>, 90 Fed.Appx. 496 (9th Cir. 2004).

Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable.  <u>See v. Durang</u>, 711 F.2d 141, 143 (9th Cir. 1983).  Applying the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the work can be expressed only in one way, lest there be a monopoly on the underlying idea.  <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 323 F.3d 763, 765 (9th Cir. 2003).  In such an instance, "the work's idea and expression 'merge.'"  The closely related doctrine of *scenes a faire*, prohibits protecting a copyrighted work from infringement if the expression embodied in the work "necessarily flows from a commonplace idea."  <u>Id.</u>

After filtering out the unprotected elements in a work, the court will determine whether the two works are substantially similar in protected expression.  <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003).  Expression in a work depicting a product of nature is entitled to only "narrow" protection.  <u>Herbert Rosenthal Jewelry Corp. v. Kalpakian</u>, 446 F.2d 738, 741 (9th Cir. 1971).  When the scope of protectable expression is narrow, "the appropriate standard for illicit copying is *virtual identity*."  <u>Apple Computer, Inc.</u>, 35 F.3d at 1439 (emphasis added).

fb.us.2497411.04

1      Plaintiff cannot and does not raise a triable issue of fact by alleging that the

2  two works share the same "overall look and feel."  It is the intrinsic test, in contrast

3  to the extrinsic test, that "asks whether the total concept and feel" of the works is

4  "substantially similar."  Cavalier, 297 F. 3d at 822.  The overall look and feel

5  inquiry is not relevant in the context of  summary judgment.  See Swirsky, 376

6  F.3d at 845.  If Plaintiff does not present objective evidence "that would permit a

7  trier of fact to find that he has satisfied the extrinsic test, [Plaintiff] necessarily

8  loses on summary judgment . . ." Kouf, 16 F.3d at 1045.

9      To satisfy the extrinsic test, Plaintiff  "is required first to identify the sources

10  of the alleged similarity between [the works in question]."  Dyer v. Napier, 2006

11  U.S. Dist. LEXIS 68990 *19 (D. Ariz., September 26, 2006).  Second, "using

12  'analytic dissection, and, if necessary, expert testimony' the Court will then

13  determine whether any of the identified similar features are protected by

14  copyright." Id. (citing Los Angeles News Service v. Tullo, 973 F.2d 791, 794 (9th

15  Cir. 1992).  Finally, to the extent that the Court has identified any protectable

16  features, the Court will determine whether the elements of the Accused Design are

17  "virtually identical" to protected expression registered in the C30028 Design.

18  Apple Computer, Inc., 35 F.3d at 1439.

19      Target is entitled to summary judgment because Plaintiff has under the

20  extrinsic test presented no triable issue of fact.  See Cavalier, 297 F. 3d at 822.  In

21  other words, no reasonable jury could after filtering out the unprotected elements,

22  find that the works in question are substantially similar in their protected elements.

23

24

25

26

27

28

1

### ARGUMENT

2    As Plaintiff's own design expert admits, Plaintiff's C30028 design is a

3    variation on the "classic tea rose" pattern that is a common textile design.  (Harder

4    Dep. 65:13-25, 66:9-10.)  The elements of a classic tea rose pattern include

5    "combinations of leaves and flowers," and certain arrangements such as lateral

6    orientation of flowers.  (Id. at 65:13-25)  The C30028 Design is comprised entirely

7    of "flowers and leaves."  (Id. at 65:24-25.)  Plaintiff, viewing the flowers and

8    leaves in aggregate, contends that the C30028 Design and the Accused Design: (1)

9    share the same "design, look, and feel," (Harder Rep. at 4); and (2) "have the same

10   qualities" with respect to floral styles and pattern arrangement, execution and

11   designs and pattern, and novelty of overall layout design."  (Id. at 6.)  However,

12   the only evidence of copying Plaintiff has presented for purposes of objective

13   extrinsic analysis is to allege substantial similarity in features including "the design

14   plus the coloration, the shading of the leaves, [and] the particular petals designs."

15   (Harder Dep., 88:25.)  Plaintiff's expert witness concludes, based on those factors,

16   that the Accused Design is a "knockoff" of the C30028 design.  (Harder Rep. at 5.)

17   Based on this evidence, Plaintiff cannot survive summary judgment under

18   the extrinsic analysis for at least three reasons.  First, Plaintiff has no protectable

19   expression in the individual floral elements that comprise the C30028 Design.

20   Second, the scope of Plaintiff's copyright does not include preexisting expression

21   or art in the public domain.  Finally, the Accused Design is not "virtually identical"

22   to any remaining element of protectable expression in the C30028 Design.

23

24   A.    Plaintiff Cannot Protect Features That Are Common in Nature

25   It is well settled under Ninth Circuit precedent that there is no copyright

26   protection for the "features that occur frequently" in natural phenomena.  E.g.,

27

28

fb.us.2497411.04

1    Cosmos, 470 F. Supp. 2d at 1082. "[I]deas, first expressed by nature, are the

2    common heritage of humankind, and no artist may use copyright to prevent others

3    from depicting them." Satava, 323 F.3d at 812. Copyright protects only

4    "'distinctive' design elements *not derived from characteristics inherent in the*

5    *naturally occurring entity*." Id. at 810 (emphasis added).

6        In Satava, the Ninth Circuit held that the scope of the plaintiff's federal

7    copyright registration did not include any element of expression "that nature

8    displays for all observers." 323 F. 3d at 811. ("[Plaintiff] may not prevent others

9    from depicting jellyfish with tendril-like tentacles or rounded bells, because many

10   jellyfish possess these body parts. He may not prevent others from depicting

11   jellyfish in bright colors, because many jellyfish are brightly colored. He may not

12   prevent others from depicting jellyfish swimming vertically, because jellyfish

13   swim vertically in nature . . .")).

14       Applying these principles, this Court has held that there is no copyright

15   protection in features "that occur frequently in natural [ ] flowers." Cosmos, 470

16   F. Supp. 2d at 1082. The plaintiff in Cosmos held a federal copyright registration

17   in his "Plumeria Lei" series of designs "consisting of both single-blossom

18   interpretations and multi-blossom arrangements" of the plumeria flower. Id. at

19   1076. The design elements included "multiple blossoms of varying sizes, together

20   with . . . design 'flourishes' such as leaves," which the plaintiff incorporated into

21   various pieces of jewelry and sold. Id. at 1075. The defendant, after seeing the

22   plaintiff's works in several publications, commenced sales of jewelry that

23   "include[d] single blossom interpretations as well as multi-blossom arrangements"

24   of the plumeria flower. Id.

25       This Court concluded that the plaintiff "could not be afforded copyright

26   protection for the representation of a plumeria flower as having five petals slightly

27

28                                                15

overlapping, slightly longer than they are wide, and with slightly pointed tips, *as all of these features occur frequently in natural plumeria flowers*." <u>Id.</u> at 1082 (emphasis added).

Here, the Court must filter from the protectable elements in the C30028 Design any feature that a natural rose could possess. Unprotectable elements include the size, color, number of petals, and any arrangement of petals that occurs in nature. <u>Id.</u> Indeed, Plaintiff admits that it "did not attempt to copyright the individual renditions of each rose, or the leaves, or any other individual plant within their design, nor do[es Plaintiff] claim enduring rights in the use of these individual floral designs." (Harder Rep. at 5.) The elements of unprotected expression that occur commonly in nature and which Plaintiff has affirmatively disclaimed must be "filtered out" of the C30028 Design. <u>Cosmos</u>, 470 F. Supp. 2d at 1082.

### B.   Plaintiff Cannot Protect Features That Are Not Original

The Court, in addition to filtering out the stock elements of a work, must also filter out any element that is not the author's original expression. <u>Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.</u>, 777 F.2d 485, 490 (9th Cir. 1985). Elements of the C30028 Design that are not original include both preexisting work and art in the public domain.

Although Plaintiff did not disclose any preexisting material to the Copyright Office in the '656 Application, Plaintiff does not dispute that the C30028 Design is a derivative work. (Compl. ¶ 12.) It is well settled that the copyright in a derivative work "extends only to the material contributed by the author of the work, *as distinguished from the preexisting material employed in the work . . . The copyright in such work is independent of*, and does not affect or enlarge the scope,

duration, ownership, or subsistence of , *any protection in the preexisting material*."
Cooling Systems, 777 F.2d at 490 (emphasis in original); see also 17 U.S.C. §
103(b). Here, Plaintiff alleges infringement of the C30028 Design as registered by
the '656 Registration. Thus, the scope of copyright allegedly infringed does not
include any feature copied from Ms. Haller's work. Numerous floral elements of
the C30028 Design, including the largest floral cluster in the tea rose pattern, are a
facsimile of expression in the preexisting Haller work. (See Cruz Decl. Ex. M);
(Harder Dep., 61:4-18.)[3]. These features therefore cannot be considered in the
substantial similarity analysis. See Cooling Systems, 777 F.2d at 490.[4]

Moreover, classic tea rose patterns are also abundant in textile design. (See
Harder Dep., 65:13-15.) The C30028 Design is "similar" to prints that are
currently and have for many years been used on fabric. (Id. 107:12-15.) Indeed,

---

[3] Plaintiff's expert, when asked to identify the original elements of expression in the
C30028 Design, stated:[3]

Q    I understand from your testimony that certain portions—certain flowers may have
been removed when design C30028 was created. There are any portions of C30028
that do not appear to have been derived from the source artwork and if so, could you
indicate those on the second page of the blue copy.

A    Not derived.

Q    Yes in other words parts- if you were to take the C30028 are there any parts of that
design that are not similar to the source artwork, any components of this design?

A.    In my opinion, No.

Q    Okay. So just to be clear your opinion is you don't see any portions of the design
C30028 that do not appear to be derived from the source artwork?

A    No.

[4] Plaintiff does not in this action rely on any registration of or assert any infringement
of any copyright in Ms. Haller's work. Indeed, because there is no evidence of any
such registration or even of an application for such a registration, the Court would
appear to lack subject matter jurisdiction over any such claim. 17 U.S.C. § 411(b);
Jefferson Airplane v. Berkeley Sys., Inc., 886 F.Supp. 713 (N.D. Cal. 1994).

fb.us.2497411.04

as Plaintiff's expert put it, a "rose is a rose." (Harder Dep. 107:2).  It is axiomatic that expression subsisting in the public domain cannot be protected by copyright.  E.g., Satava, 323 F. 3d at 811.  While, under certain circumstances, a combination of elements in the public domain may be subject to copyright, "it is not true that any combination of unprotectable elements automatically qualifies."  Id.  "Congress did not intend for artists to fence off private preserves from within the public domain . . ."  Id. n5.  The Ninth Circuit rule is that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement that their combination constitutes an original work of authorship."  Id.  "The selection of [a medium of expression], . . bright colors, proportion, vertical orientation, and stereotyped [ ] form, considered together, lacks the quantum of originality needed to merit copyright protection."  323 F. 3d at 811.

The Ninth Circuit refused in Satava to protect the Plaintiff's glass jellyfish sculptures which combined public domain elements.  Id.  The court reached this conclusion based in part on its examination of the dozens of photographs of sculptures that were in the record.  Id.  The sculptures were not identical, but had features that were substantially similar.  Id.  They differed insofar as the artist had "added or omitted some standard element."  Id.  To give the plaintiff a copyright on the basic combination of elements would "effectively give him a monopoly on the idea" of a jellyfish sculpture."  Id.

The record in this proceeding contains numerous examples of "classic tea rose patterns."  (See Cruz Decl. Ex. H.)  While none of the patterns are identical to the C30028 Design, each uses a tea rose as the central design feature.  (See Harder Dep., 114:2.)  To the extent that the C30028 has only added or omitted public domain elements Ninth Circuit precedent eschews protection in such features.

1

2      C.    The Accused Design is Not "Virtually Identical" To Any Protectable

3            Feature in the C30028 Design

4            After applying the limiting doctrines to: (1) filter out the features of the

5      C30028 design that are *scenes a fair*, preexisting, or extant in the public domain,

6      and (2) subtracting the unoriginal elements, the final step in the Ninth Circuit's

7      copying analysis is to determine whether the works are "substantially similar" in

8      any remaining expression.  Apple Computer, Inc., 35 F.3d at 1442.   Where "[t]he

9      range of protectable expression is narrow, the appropriate standard for illicit

10     copying is 'virtual identity.'"  Id. at 1439.  (See also Satava, 323 F. 3d at 812

11     (copyright in work comprising the authors contribution to ideas in the public

12     domain protects against only virtually identical copying.))  This principle has long

13     been a part of copyright law.  Indeed, Judge Learned Hand observed in the context

14     of stock dramaturgy:  "The less developed the characters, the less they can be

15     copyrighted . . ."  Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d

16     Cir.1930).

17           This Court applied the "virtual identity" standard in Cosmos to an accused

18     floral design.  After omitting the "unprotectable" elements, the copyrightable

19     elements of the plaintiff's design were "minute characteristics of the blossom

20     petals, the arrangement of blossoms and other flourishes in different variations on

21     the 'multi-blossom' [works] . . ."  Id.  Analytic dissection "demonstrate[d] that any

22     and all similarities between the [parties'] plumeria designs arose from the common

23     usage of unprotected elements- i.e. the number of petals, the "pinwheel"

24     arrangement . . . and the overall size, color, and texture of the pieces."  Id. at 1084.

25     Thus, the works were not "substantially similar" and the plaintiff's copyright claim

26     failed.

27

28

fb.us.2497411.04

1    Putting aside the stock and preexisting elements of Plaintiff's work as

2  required under Ninth Circuit precedent, the illustrations in Exhibit N to the Cruz

3  Declaration make clear that the remaining portions of the Accused Design cannot

4  under the extrinsic test be said to be "substantially similar," much less "virtually

5  identical," to the allegedly parallel expression in the C30028 Design.

6    In these circumstances, no reasonable jury could find under the extrinsic test

7  that the two works in question are substantially similar in protected elements, and

8  Target is entitled to summary judgment on Plaintiffs' claim for copyright

9  infringement.

10    ### **CONCLUSION**

11    For the foregoing reasons, defendant Target Corporation respectfully moves

12  the Court for the entry pursuant to Fed. R. Civ. P. 56 of an order granting Target

13  summary judgment on all claims Plaintiff has asserted against it in this action.

14

15  Dated: December 24, 2007                    DAVID F. MCDOWELL
                                                SCOTT C. MOORE
16                                              MORRISON & FOERSTER LLP

17

18                                              By:  */s/ Scott C. Moore*
                                                    Scott C. Moore
19                                                  Attorneys for Defendant
                                                    TARGET CORPORATION
20

21

22

23

24

25

26

27

28

fb.us.2497411.04

20