UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

| Case No. | CV 06-4640 DSF (AJWx) | Date | February 4, 2008 |
|---|---|---|---|
| Title | L.A. Printex Industries, Inc. v. Target Corp., et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order DENYING (1) Defendant Target Corporation's Motion for Summary Judgment; (2) Defendant Age Group Ltd.'s Motion for Summary Judgment for Invalidity and/or Unenforceability; and (3) Plaintiff L.A. Printex Industries, Inc.'s Motion for Summary Adjudication Pursuant to Fed. R. Civ. P. 56 as to Defendants Target Corp. and Age Group, Ltd.

   This matter is before the Court on (1) Defendant Target Corporation's ("Target") Motion for Summary Judgment ("Target Motion"); (2) Defendant Age Group Ltd.'s ("Age Group") Motion for Summary Judgment for Invalidity and/or Unenforceability ("Age Group Motion"); and (3) Plaintiff L.A. Printex Industries, Inc.'s ("LAP") Motion for Summary Adjudication Pursuant to Fed. R. Civ. P. 56 as to Defendants Target Corp. and Age Group, Ltd. ("LAP Motion").

## I.  FACTUAL BACKGROUND

   Plaintiff LAP is a design studio and fabric printing company that creates artwork for use on printed textiles.  (Pl.'s Statement of Uncontroverted Facts and Conclusions of Law in Supp. of Pl.'s Motion for Summary Adjudication ("LAP UF") No. 1.)  In 2002, LAP purchased a painting from Erika Haller depicting an arrangement of flower clusters (the "Haller Design"), along with all intellectual property rights in the design.  (Statement of Undisputed Facts and Conclusions of Law on Mot. of Def. Target Corp. for Summ. J. ("Target UF") No. 1; Decl. of Scott A. Burroughs, Esq. ("Burroughs Decl.") Ex. J at Ex. 1.)  The Haller Design was never registered with the United States Copyright Office.  (Def. Age Group Ltd.'s Statement of Material Facts Not in Issue in Supp. of Age Group's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Mot. for Summ. J. ("Age Group UF") No. 1.) Moon Choi, a designer affiliated with LAP, used a computer to scan and adapt the Haller Design into a design for use on textiles (the "Design"). (Target UF No. 2; LAP UF No. 2.) The Design was registered with the United States Copyright Office and assigned U.S. Copyright Number VAu 575-656. (LAP UF No. 4.)[1] LAP's registration application did not reveal that the Design was based on the Haller Design. (Age Group UF No. 2.)

LAP displayed the Design at its facility, distributed samples, strike-offs, and swatches depicting the Design to its showroom customers, and received orders for 139,655 yards of fabric bearing the Design. (LAP UF Nos. 5-7.)

In 2005, Target purchased from Age Group women's sleepwear, which bore a design (the "Accused Design") which is here accused of infringing the Design. (Target UF No. 4.) Target sold the sleepwear in 2005 and early 2006 and no longer sells the sleepwear. (Id. No. 6.) On or around August 1, 2005, LAP discovered that Target was selling this sleepwear. (LAP UF No. 8.)[2]

## II. LEGAL STANDARD

Courts may grant summary judgment in a party's favor "upon all *or part*" of a party's claim. Fed. R. Civ. P. 56(a) (emphasis added). The standard and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim. See Delta Sav. Bank v. United States, 265 F.3d 1017, 1021 (9th Cir. 2001).

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Where the moving party has the burden of proof at trial, it must establish "beyond controversy every essential element" of its claim. So. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (citation and internal quotation marks omitted) (adopting the district court's opinion). The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(e). A non-moving party who

---

[1] Defendants do not dispute the registration, but contest its validity.

[2] Defendants do not dispute that LAP found garments bearing the Disputed Design, but dispute whether the Disputed Design is substantially similar to the Design.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Anderson, 477 U.S. at 250-51.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

When parties submit cross-motions for summary judgment, each motion must be considered on its own merits.  Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).  Nevertheless, the Court must consider the appropriate evidentiary material identified and submitted in support of both motions before ruling on each of them.  Id.

### III.  DISCUSSION

#### A.  Target's Motion for Summary Judgment

In order to prevail on its claim for copyright infringement, LAP must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).  LAP submits its registration certificate for the Design (LAP Mot. Ex. B), which is prima facie evidence of the validity of the copyright.  17 U.S.C. § 410.  In its Motion, Target does not contest that LAP owns a valid copyright for the Design.

"Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work."  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994).  Target does not claim that it did not have access to the Design.

"[S]ummary judgment is not highly favored on questions of substantial similarity in copyright cases.  When the issue is whether two works are substantially similar, summary judgment is appropriate if no reasonable juror could find substantial similarity of ideas and expression, viewing the evidence in the light most favorable to the nonmoving party.  Where reasonable minds could differ on the issue of substantial similarity, summary judgment is improper."  Smith v. Jackson, 84 F.3d 1213, 1218 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Cir. 1996).

The Ninth Circuit applies a two-part test to determine substantial similarity: the extrinsic test and the intrinsic test. Apple Computer, Inc., 35 F.3d at 1442. "[T]he 'extrinsic' test considers whether two works share a similarity of ideas and expression based on external, objective criteria." Smith, 84 F.3d at 1218. "If plaintiff satisfies the extrinsic test, then the subjective 'intrinsic test' asks whether an 'ordinary, reasonable observer' would find a substantial similarity of expression of the shared idea." Id. "For summary judgment, only the extrinsic test is relevant. If plaintiff satisfies the extrinsic test, the intrinsic test's subjective inquiry must be left to the jury and summary judgment must be denied." Id. (internal citations omitted).[3]

"Because only those elements of a work that are protectible and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered 'as a whole.'"[4] Apple Computer, Inc., 35 F.3d at 1443. In applying the extrinsic test, then, the Court engages in a three-step process. First, "[t]he plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work." Id. Second, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." Id. Third, "[h]aving dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright - that is, decide whether the work is entitled to 'broad' or 'thin' protection."

In its own Motion and its Opposition to Target's Motion, LAP identifies four flower groupings, as well as their layout and color scheme, as the elements infringed by Defendants. (See Burroughs Decl. Ex. G; LAP Opp'n to Target Mot. 12, 14.) Target contends that the flower groupings are not protectible under copyright because (1) flowers are common in nature and in textile design; and (2) the groupings are derivative of the Haller Design.

---

[3] Although the intrinsic test is generally left for the finder of fact, "[a] grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded." Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983).

[4] LAP contends that no such filtering of unprotected content should occur when assessing infringement of visual art. (LAP Reply 8.) But the authority cited by LAP for this proposition explicitly holds that "[a]s with literary works, unprotectible elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

### 1. Use of Natural Features and Scenes a Faire

"Any copyrighted expression must be 'original.' Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible. There must be something more than a 'merely trivial' variation, something recognizably the artist's own." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003). As a result, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectible under copyright law." Id. Likewise, there is no protection for "elements of expression that nature displays for all observers." Id. at 812. In Satava, for example, those elements of glass sculptures of jellyfish that corresponded to natural features of jellyfish or were common to the medium of glass sculpture were not protected. Id. at 811.

Here, some elements of the Design are not protectible because they are simply features of flowers. That the floral arrangements have petals, leaves and stems, for example, is not protectible. That the roses are pink and red with green leaves is also not protectible, as that color arrangement is naturally suggested by the common colors of roses. See id. at 813 ("Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.")

Nonetheless, it is not the case that depictions of natural features may never be protected by copyright. Id. at 812. With animals, "[a]n artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of an animal. An artist may vary the background, lighting, or perspective. Such variations, if original, may earn copyright protection." Id. at 813. Thus, in Satava, the plaintiff was entitled to protection for "the distinctive curls of particular tendrils; the arrangement of certain hues; the unique shape of jellyfishes' bells." Id. at 812.

Some features of the Design fall into this latter category. As described by LAP, the Design is "an abstract floral two-dimensional artwork composed of various flowers in different states of bloom, with articulated pistils and stamens, with the flower's sepals interconnected at various, irregular points with flowing vinery and elements of latticework." (Decl. of Moon Choi in Supp. of Pl.'s Mot. for Summ. Adjudication ¶ 4.) As is suggested by this description, a reasonable jury could conclude that the Design is not merely a naturalistic depiction of flowers, but an arrangement of flowers into an artful design. This arrangement is sufficient to suggest authorship by the Design's creator. See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 489 (9th Cir. 2000) ("All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

something more than a 'merely trivial' variation." (internal quotation and citation omitted)). But the protection for such artful arrangement of natural features would be "thin, . . . comprising no more than [the artist's] original contribution to ideas already in the public domain." Satava, 323 F.3d at 812. This thin copyright "protects against only virtually identical copying." Id. In addition, the arrangement of unprotected features – here, the alternating pattern of large and small bundles of flowers – is protectible because the "elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Id. at 811.

Target also argues that the use of tea roses in textile production is so common that they constitute *scenes a faire*, or content so common or trite it is not protectible. See Smith, 84 F.3d at 1216 n.3. In support of this argument, Target relies on Exhibit H to the Declaration of Timothy J. Cruz in Support of Motion of Defendant Target Corporation for Summary Judgment ("Cruz Decl."), which contains several pages of depictions of roses. Exhibit H is described in the Cruz Declaration as "documents marked in the deposition of Frances Harder as deposition Exhibit Nos. 38-49." (Cruz Decl. ¶ 9.) No further description is given. It is also impossible to determine what is supposed to be depicted in these exhibits from the testimony of Frances Harder referenced by Target in its Motion. The evidence is thus insufficient to establish that LAP's depictions are *scenes a faire*. In any event, even if these pictures established that roses are commonly used in textiles, they do not establish that the particular employment of roses in the Design is not sufficiently original to deserve protection.

### 2. Use of Features from the Haller Design

It is undisputed that LAP used a computer to scan and adapt elements of the Haller Design, and that the resulting work was registered as the Design. (Target GI No. 2.) In general, "[t]he copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C § 103(b). However, where a plaintiff is the owner and copyright holder of both the underlying and derivative works, the plaintiff may base its claims on elements contained in both works. Apple Computer, 35 F.3d at 1447-48. LAP submits evidence that it is the owner of all rights in the Haller Design. (Burroughs Decl. Ex. J at Ex. 1.)

In Apple Computer, the underlying work had been registered with the Copyright Office. 35 F.3d at 1438. Here, it is undisputed that the Haller Design has not been registered. (Age Group UF No. 1.) Thus, Target argues that LAP cannot sue for infringement of those elements of the Design contained in the Haller Design. This argument is unavailing.

A number of courts, following the lead of a leading copyright treatise, have held

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

that the owner of both a derivative and underlying work may sue for elements common to both, regardless of whether the underlying work has been registered.  See, e.g., Christopher Phelps & Assocs. v. Galloway, 492 F.3d 532, 539 (4th Cir. 2007); Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 747 (2d Cir. 1998); Melville Nimmer, 2 Nimmer on Copyright § 7.16[B][2][c] (2007).  Target offers as contrary authority Shaw v. Lindheim, 809 F. Supp. 1393, 1402-03 (C.D. Cal. 1992), a case in which the issue was raised but not decided.  In Shaw, the defendant – accused of infringing the plaintiff's rights in a television script – made the argument that "since [the] plaintiff never registered the underlying treatment, a prerequisite to bringing suit for copyright infringement in accordance with 17 U.S.C. § 411(a), he [could not] assert a claim or recover for infringement of protectible expression original to that treatment."  Id. at 1398.  But the court never directly addressed this argument, as it concluded that "whatever the treatment contributed to the script either constituted mere uncopyrightable ideas or unprotectible scenes a faire."  Id. at 1403.  It is true that Apple Computer described Shaw in an explanatory parenthetical as standing for the proposition that "where underlying work was unregistered, owner of derivative work could not recover for copying of expression contained in original."  35 F.3d at 1447.  But Apple Computer was not deciding this issue, either, and its characterization of a case in a "see also" citation does not change the holding of the case or establish this principle of law.

The Accused Design must be compared to the Design, including those elements included in the Haller Design.

### 3. Comparison of the Design with the Accused Product

Limiting the Design to its protectible elements, the Court concludes that reasonable jurors could find substantial similarity of ideas and expression between the Design and the Accused Design.

With regard to the extrinsic test, LAP asserts that substantial similarity can be seen by comparing four floral groupings taken from the Design with similar groupings in the Accused Design.  (See Burroughs Decl. Ex. G.)  With regard to two of the groupings, the Design and Accused Design depict the same number of flowers, identically drawn and arranged, with leaves and stems portrayed identically.  (See id.)  There is some minor variation with regard to the latter two groupings – the number of leaves and flowers is different, but not their shape, and the stems bend in a slightly different fashion.  (See id.)  To the extent there are these minor variations, however, they do not diminish the inference of copying.  Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 360 (9th Cir. 1947) ("[I]nfringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

disguise the piracy." (quoting 18 C.J.S. Copyright and Literary Property § 34)). In addition, the groupings of flowers are arranged in highly similar fashion in the Design and in the Accused Design, with small bundles of flowers interspersed among larger groupings of flowers. (Compare id. Ex. A to id. Ex. C.)

Comparing the protectible elements of the Design to the Accused Design, reasonable jurors could find a near identity in the particular portrayal of natural features in each. Having survived the extrinsic test, LAP's claim of substantial similarity must be submitted to the jury. Smith, 84 F.3d at 1218.

Target's Motion for Summary Judgment is DENIED.

### B. Age Group's Motion for Summary Judgment

In order to prevail on its claim for copyright infringement, LAP must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc., 499 U.S. at 361. Age Group contends that LAP's copyright is invalid, because LAP failed to disclose in its copyright registration that the Design was derived from the Haller Design.

"It has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663, 667 (3d Cir. 1990). However, "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." Urantia Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997).

There is no dispute that LAP's registration application did not reveal that the Design was based on the Haller Design. (Age Group UF No. 2.) But Defendants have not established that this omission was material, as the owner of original and derivative works can obtain copyright protection for the original work by registering the derivative work. See Streetwise Maps, Inc., 159 F.3d at 747; Christopher Phelps & Assocs., 492 F.3d at 539; Szabo v. Errisson, 68 F.3d 940, 942-43 (5th Cir. 1995).

That LAP's rights were unaffected by the derivative status of the Design also defeats Age Group's only evidence of fraudulent intent – LAP's failure to disclose the Design's derivative status before the Copyright Office and this Court – of any probative value. LAP simply had no motive to conceal information. Even assuming that this evidence could support a claim of fraud, LAP submits evidence that would create a genuine issue of fact with regard to fraudulent intent. In particular, it submits evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

that the person who filled out the copyright registration was a native Korean with limited English skills, who did not have the assistance of counsel (See Decl. of Jae Nah ("Nah Decl.") ¶¶ 4-5, Ex. B). Based on this evidence, a reasonable juror could believe that the omission was inadvertent.

Age Group's Motion for Summary Judgment is DENIED.[5]

### C.  L.A. Printex's Motion for Summary Judgment

In order to prevail on its claim for copyright infringement, LAP must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc., 499 U.S. at 361.

#### 1.  Copyright Validity

LAP submits its registration certificate for the Design (LAP Mot. Ex. B), which is prima facie evidence of the validity of the copyright. 17 U.S.C. § 410. On production of the registration certificate, the burden shifts to Defendants to demonstrate the invalidity of the copyright. Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997).

Defendants contend that LAP's copyright is invalid because LAP failed to disclose to the Copyright Office that the Design was based on the Haller Design. But this argument fails for the reasons previously stated. The omission was not material and is not evidence of any intent to defraud.

#### 2.  Copying

"Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work." Apple Computer, 35 F.3d at 1442.

##### a.  Access

"Proof of access requires an opportunity to view or to copy plaintiff's work. This is often described as providing a 'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." Three Boys Music Corp., 212 F.3d at 482. "There must be a reasonable possibility of viewing the plaintiff's work - not a bare possibility." Id.

---

[5] LAP's request to set a hearing on Rule 11 sanctions is denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

(internal quotation omitted).  Access may be shown by evidence that the plaintiff's work has been widely disseminated.  Id.  Here, LAP submits undisputed evidence that it has displayed the Design at its facility, distributed samples, strike-offs, and swatches bearing the Design to its showroom customers, and received orders for 139,655 yards of fabric bearing the Design between October 18, 2002 and January 8, 2007.  (LAP UF Nos. 5-7). Defendants do not contest that this is sufficient to demonstrate access to the Design.  In addition, the striking similarity between the Design and the accused products discussed below supports an inference of access.  See Three Boys Music Corp., 212 F.3d at 485.

### b. Substantial Similarity

The Ninth Circuit applies a two-part test to determine substantial similarity: the extrinsic test and the intrinsic test.  Apple Computer, 35 F.3d at 1442.  "[T]he 'extrinsic' test considers whether two works share a similarity of ideas and expression based on external, objective criteria."  Smith, 84 F.3d at 1218.  "If plaintiff satisfies the extrinsic test, then the subjective 'intrinsic test' asks whether an 'ordinary, reasonable observer' would find a substantial similarity of expression of the shared idea."  Id.  Although the intrinsic test is generally left for the finder of fact, "[a] grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded."  Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983); Express, LLC v. Fetish Group, Inc., 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006).

Relying on the same arguments asserted in Target's Motion, Defendants assert that only those elements of the Design not derived from nature, *scenes a faire*, or the Haller Design may be considered for the purpose of assessing substantial similarity.  As discussed above, LAP is entitled only to thin protection against "virtually identical copying" of the Design's unique presentation of natural features.  See Satava, 323 F.3d at 812.  However, Defendants' arguments for limiting LAP's copyright protection further, based on use of flowers as *scenes a faire* and use of elements contained in the Haller Design, fail for the reasons discussed above.  In addition, because the intrinsic test involves a subjective inquiry, its application should only be taken from the trier of fact if the works "are so overwhelmingly identical that the possibility of independent creation is precluded."  Twentieth Century-Fox Film Corp., 715 F.2d at 1330.

Limiting the Design to its protectible elements and applying these standards, the Court concludes that reasonable jurors could not disagree about whether the accused design is substantially similar to the Design.  As discussed, an objective comparison of protectible elements in the Design and the Accused Design under the extrinsic test leads inevitably to the conclusion that they are nearly identical.  What small variations there are between the elements are insufficient to defeat an inference of copying.  See Universal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Pictures Co., 162 F.2d at 360.

Considering the two works as a whole, they are again overwhelmingly identical. The aforementioned floral groupings are arranged in a highly similar fashion. The minor variations in the floral groupings are insufficient to support any reasonable disagreement as to the similarity of the works, as such insignificant details would never be noticed. See Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F. Supp. 1366, 1368-69 (D.C.N.Y. 1969) (granting summary judgment to plaintiff where minor, unobservable differences in shape of flower petals did not change overall impression of similarity). LAP has established a presumption of copying.

### 3. Independent Creation

"By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." Three Boys Music Corp., 212 F.3d at 486.

As evidence of independent creation, Age Group submits the Declaration of Michelle Kleinman in Opposition to Plaintiff's Motion for Summary Judgment ("Kleinman Decl.") In her Declaration, Kleinman states that she "created and modified the floral pattern in issue in this case" (Kleinman Decl. ¶ 2), basing the design on previous floral design patterns she had created. (Id. ¶ 4.) She also attaches copies of the prior designs, as well as the Computer Assisted Design print-outs of the design at issue here. (Id. Exs. 250-53.)

LAP urges the Court to disregard the Kleinman Declaration because its claims are implausible. But it is not the role of the Court on a summary judgment motion to weigh evidence or assess its credibility. McLaughlin v. Liu, 849 F.2d 1205, 1207 (9th Cir. 1988). LAP relies on a line of cases following Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), holding that "if the factual context renders respondents' claim implausible . . . respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." See, e.g., Stitt v. Williams, 919 F.2d 516, 523-24 (9th Cir. 1990). But "[i]t is clear from the *Matsushita* opinion that the Court was not speaking of direct evidence, but of circumstantial evidence. *Matsushita* authorizes an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence, particularly in antitrust conspiracy cases, not an inquiry into the credibility of direct evidence." McLaughlin, 849 F.2d at 1206. The Kleinman Declaration is direct evidence of independent creation. This is also not a case, like those cited by LAP, in which a declaration is a sham, because it contradicts prior sworn testimony.

The Kleinman Declaration raises a triable issue of fact as to independent creation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

LAP's Motion for Summary Adjudication is DENIED.[6]

## IV.  CONCLUSION

For the foregoing reasons, Defendant Target Corporation's Motion for Summary Judgment, Defendant Age Group Ltd.'s Motion for Summary Judgment for Invalidity and/or Unenforceability; and Plaintiff L.A. Printex Industries, Inc.'s Motion for Summary Adjudication Pursuant to Fed. R. Civ. P. 56 as to Defendants Target Corp. and Age Group, Ltd. are DENIED.

IT IS SO ORDERED.

---

[6] LAP requests a continuance under Federal Rule of Civil Procedure 56(f) in order to conduct further discovery related to the Kleinman Declaration.  But Rule 56(f) only allows a continuance "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition . . . ."  (emphasis added).  As LAP presents no other authority for delaying consideration of its Motion, the request for a continuance is DENIED.  In any event, it does not appear that the evidence LAP seeks from Kleinman's computer would support any proper basis for ignoring the Kleinman Declaration.  If found, it would simply provide evidence of the Declaration's lack of credibility, which must be presented to the jury.  McLaughlin, 849 F.2d at 1207.